# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MATTHEW PULS and
NOOSI PULS,

     Plaintiffs,

v.                                                                    Case No. 8:17-cv-01024-T-02TGW

AMERICAN AIRLINES, INC.,

     Defendant.

_____/

## ORDER

This action concerns a bottle that fell out of an overhead compartment during a flight. The matter comes to the Court on a motion for summary judgment from Defendant American Airlines, Inc. Dkt. 98. Plaintiffs have filed an opposition. Dkt. 105. The Court GRANTS Defendant's motion for summary judgment. Dkt. 98. The remaining motions are denied as moot. Dkts. 97, 99, 115, 119-121.

## BACKGROUND

The material facts are largely undisputed. Plaintiff Noosi Puls is the wife of Plaintiff Matthew Puls. Dkt. 53 ¶ 44. On December 30, 2015, Plaintiff Noosi boarded Flight 1846 operated by Defendant from Washington, D.C. to Tampa. *Id.* ¶ 7. When the airplane landed in Tampa, the overhead bin compartment above

Plaintiff Noosi's aisle seat, 12D, "suddenly and without warning opened." *Id.* ¶ 15.

A glass beverage bottle fell from the compartment and struck Plaintiff on the

head.[1] *Id.* ¶ 16. The record suggests the bottle was sixteen ounces in size and

approximately two-thirds full. Dkt. S-112 at 9. Plaintiff was not bleeding, *id.* at 10,

but she sought medical attention and now seeks bodily injury damages. Though

unaddressed in the pleadings or Plaintiff Noosi's deposition, at oral argument on

the motion for summary judgment, Plaintiffs' counsel represented that at trial

Plaintiff Noosi would testify it was her bottle that was placed in the bin.

Plaintiffs brought suit on May 2, 2017. Dkt. 1. Plaintiff Noosi alleges

negligence in Count I and breach of contract in Count III of the Seconded

Amended Complaint. Dkt. 53 at 6, 12. Plaintiff Matthew brings a loss of

consortium claim in Count II. *Id.* at 11. Defendant moves for partial summary

judgment as to Counts I and III. Dkt. 98.

## SUMMARY JUDGMENT STANDARD

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). If that standard is met, the burden shifts to the nonmoving party to

---

[1] There is a discrepancy about whether the bottle contained Snapple or Mistic. The Court's analysis is the same in either event.

"come forward with specific facts showing that there is a genuine issue for trial."
*Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted).

"A fact is material if it has the potential of affect[ing] the outcome of the case." *Shaw*, 884 F.3d at 1098 (internal quotation marks and citation omitted). And, to raise a genuine "dispute," the nonmovant must point to enough evidence that "a reasonable jury could return a verdict for [him]." *Id.* (modification in original). The Eleventh Circuit further teaches that "[w]hen considering the record on summary judgment the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (internal quotation marks and citations omitted).

## DISCUSSION

The Court finds that, in the absence of an applicable duty or causation, Plaintiff Noosi is unable to establish a negligence claim. Plaintiff's breach of contract claim similarly fails. Lastly, because under Florida law "a loss of consortium claim is derivative in nature and wholly dependent on [the injured party's] ability to recover," *In re Engle Cases*, 767 F.3d 1082, 1087 (11th Cir. 2014) (internal quotation marks and citation omitted), judgment in Defendant's favor on Count II is appropriate. *See also Allen v. Am. Airlines, Inc.*, 301 F. Supp.

2d 370, 383 (E.D. Pa. 2003) (granting summary judgment on loss of consortium claim in carry-on luggage case).[2]

I.    Negligence

A court sitting in diversity jurisdiction "must apply the choice of law rules of the forum state to determine which substantive law governs the action." *U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008). Florida resolves conflict-of-laws questions according to the most significant relationship test. *Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). The following factors are relevant: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.*

Here, the injury and the conduct causing the injury occurred in Florida. Plaintiffs reside in Florida. Dkt. 53 ¶ 1. The Court finds that, because Florida has the most significant relationship to the claims, Florida law applies.

In Florida, negligence has four elements: (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach

---

[2] As both its second and thirteenth affirmative defenses in its Answer, Defendant argues that Plaintiffs' claims are preempted by the Federal Aviation Act. Dkt. 67 ¶¶ 74, 85; *see, e.g.*, *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338-39 (5th Cir. 1995). Neither party raises the issue at summary judgment, and the Court need not address the matter in resolving the motion.

was the actual and proximate cause of injury to plaintiff; and (4) actual damages resulted from that injury. *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008) (citation omitted).

An airline may also be liable under the doctrine of res ipsa loquitur. *Greene v. Sw. Airlines Co.*, No. 8:10-cv-1552-T-35EAJ, 2012 WL 13105853, at *3 (M.D. Fla. Jan. 19, 2012) (citation omitted). As the Florida Supreme Court has explained, the doctrine is

> of extremely limited applicability. . . . Essentially, the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control. The district courts of Florida have expanded the doctrine far beyond its intended perimeters, both by liberalizing the elements requisite to its application and by allowing the development of inferences not only as to the incident itself but also as to pre-incident acts, such as manufacture or production.

*Goodyear Tire & Rubber Co. v. Hughes Supply, Inc.*, 358 So. 2d 1339, 1341-42 (Fla. 1978). "[T]he threshold inquiry is whether that which occurred is a phenomenon which does not ordinarily happen except in the absence of due care." *Id.* at 1342. Plaintiff bears the burden of establishing that her injuries resulted from negligence, that Defendant was the "probable actor," and that Defendant had "exclusive control" over the injury-causing instrumentality. *Id.*

Boiled down, Plaintiff Noosi complains that Defendant had a duty to "keep and maintain the overhead compartments in a good and safe condition so that same

should not constitute a menace, danger, nuisance, snare or trap for passengers," and that Defendant "negligently permitted the mentioned property to become and remain in a dangerous and/or defective condition, in that [Defendant] did not close the overhead compartment over [Plaintiff Noosi's] seat so it would be in a safe position and not be a hazard so as to constitute a menace, danger, nuisance, snare and/or trap for passengers." Dkt. 53 ¶¶ 29-30.

Put simply, Plaintiff argues for a duty that does not exist. To be sure, an airline does hold many duties to its passengers. For example, the airline might have a duty to "observe that passengers were stowing their baggage in a reasonable manner, to provide assistance, as requested, and to make a visual check to assure that compartment doors were closed on takeoff," but this does not include a duty to open bins to inspect their contents. *See, e.g.*, *Ginter v. Trans World Airlines, Inc.*, 538 N.Y.S.2d 638, 640 (N.Y. App. Div. 1989), *aff'd*, 543 N.E.2d 741 (N.Y. 1989); *see also Allen v. Delta Airlines, Inc.*, No. CV-01-0069(DGT), 2003 WL 21672746, at *6 (E.D.N.Y. July 3, 2003).

Flight attendants might also need to "stop passengers from stowing items which may be inappropriate from the overhead compartment . . . [or] watch passengers as they store carry-on items in the overhead compartments to insure that the compartments are not filled beyond a safe capacity." *Aponte v. Trans World Airlines, Inc.*, No. 94 Civ. 6337(LMM), 1996 WL 527339, at *3 (S.D.N.Y.

Sept. 16, 1996). Unusual items might include a radio, *id.*, or a golf club, *Barrera v.*
*Am. Airlines*, No. 98 Civ. 2685 (TPG), 2002 WL 1059160, at *3 (S.D.N.Y. May
24, 2002); *Monter v. Delta Air Lines, Inc.*, No. 00-cv-0244E(Sr), 2002 WL
1628086, at *2 (W.D.N.Y. June 24, 2002), but not a camera case, s*ee Rodriguez*
*Pardo v. Delta Airlines, Inc.*, 767 F. Supp. 26, 28 (D.P.R. 1991) (finding no
liability where plaintiff argued airline had obligation to check inside of overhead
bins but there was no evidence of improperly loaded bins and "speculations and
conjectures" will not defeat summary judgment).

Even if a glass bottle is such an unusual item, there is no record evidence
that the flight attendants saw the bottle before its placement in the overhead bin or
breached their duty to oversee the boarding process more generally. It would be
unreasonable to require the three flight attendants as mandated by the FAA, *see*
Dkt. 98-1 at 11, to closely inspect each passenger individually as he or she stowed
luggage, and it is certainly easier for a flight attendant to spot the improper stowing
of a golf club or a bulky item than something small and easily concealed like a
bottle. Additionally, Flight Attendant Mary Thomas, who served on the flight,
testified that once an overhead bin was shut, whether by a passenger or a flight
attendant, she would not open the bin to rummage through its contents because
"[she] wouldn't have a reason to re-open it." Dkt. 105-3 at 9.

Finding that Defendant breached any such duty would be especially bizarre in this case where, purportedly, Plaintiff Noosi was the one to place the unusual item in the bin. She would be, in effect, faulting the flight attendants for not stopping her from committing a dangerous action.

As for the opening of the overhead compartment, there is again no applicable duty that was breached. Among the wide variety of falling luggage cases, certainly the most relevant are those in which an object fell during the plane's landing. In one of the few appellate cases on the subject, an overhead bin opened after landing and during taxi to the gate, causing luggage to fall on a passenger. *Robinson v. Northwest Airlines, Inc.*, 79 F.3d 1148, 1996 WL 117512, at *1 (6th Cir. Mar. 1, 1996). The court noted that the plaintiff

> did not know how the bin popped open[, . . .] could not show that the latch was not closed, that the bin was overloaded, or that [the airline] failed to properly maintain the overhead storage bin and its latching mechanism. Viewed in a light most favorable to [the plaintiff], the facts at most show that the overhead bin opened. From this, [the plaintiff] argues that it must have been overloaded, unlatched, or that the latch must have been in improper working order. In essence, [the plaintiff] seeks to have a form of res ipsa loquitur applied to her claim.

*Id.* at *2. The court nonetheless rejected the res ipsa loquitur theory because the plaintiff did not show the "instrumentality" was in the exclusive control of the airline as "it is just as plausible that a passenger opened up the bin while the

airplane was still taxiing to the gate in an attempt to gain advance purchase of his or her luggage, and that the luggage fell out of the bin at that time." *Id.*

Furthermore, though the plaintiff in *Robinson* sought to impose a duty for the flight attendants to "physically touch the bins to ensure that they are shut properly" prior to landing, the court noted that the plaintiff had "not established that the breach of the duty in this case caused the injury." *Id.* at *3; *see also Allen*, 301 F. Supp. 2d at 381 (citing *Robinson* in finding that it was not the "supposedly lax manner with which Defendant maintains its overhead bins" that caused the injuries).

Plaintiff Noosi testified that after she put her bag in the bin during boarding, she did not close it. Dkt. 105-2 at 15.[3] She did not recall people stowing luggage in the bin. *Id.* at 17. She further testified that, following the loud noise at landing, many items fell on her head, though she was unsure what they were. *Id.* at 18-19. 30. A flight attendant later showed her the glass bottle, which was eventually discarded when no passenger, including Plaintiff Noosi, claimed it. *Id.* at 21; Dkt 105-3 at 15.

In her answer to an interrogatory, Plaintiff Noosi further stated:

> The overhead compartment was not opened by anyone during flight[.] I know this because I was seated in the aisle seat, directly below the compartment and I would have been clearly

---

[3] She did not mention, however, that she placed the glass bottle in the overhead bin. Furthermore, when asked whether she had ever consumed a bottle of Snapple before, Plaintiff Noosi merely replied that she "used to drink Snapple." Dkt. 122-3 at 20.

> aware if someone had opened it. Additionally, no one was in
> the process of opening the compartment when the items fell on
> me because the plane was landing and all passengers and flight
> crew were seated at the time of the incident.

Dkt. 105-2 at 31. Plaintiff appears, however, to contradict this answer by her own

testimony. As Plaintiff's expert points out, Plaintiff Noosi testified that she both

fell asleep after takeoff and left her seat to use the lavatory. Dkt. 99-1 at 13; Dkt.

122-2 at 22; Dkt. 122-3 at 1.

In any event, crediting Plaintiff's interrogatory answer as true, Plaintiff

essentially asks the Court to create a duty for a flight attendant to physically touch

an overhead bin that, once closed, has never been opened since takeoff.[4] Even if

one could speculate that a passenger improperly closed the overhead bin and,

perhaps, the latching mechanism never fully engaged, there is no evidence the

outward appearance of the bin gave any indication of this.

There is, furthermore, no evidence the flight attendants were aware of the

bottle before an attendant picked the bottle up off the floor. *See, e.g.*, *Allen*, 301 F.

Supp. 2d at 379-81 (finding relevant that attendant did not play an "active role" in

loading or unloading fallen item); *see also Cherone v. E. Airlines, Inc.,* No. HAR

87-854, 1988 WL 40568, at *2 (D. Md. Apr. 18, 1988) (granting summary

---

[4] Plaintiff does not direct the Court to any evidence that the flight attendants were aware that this
particular bin was opened during the flight. In fact, at least one of the attendants could not recall anything
in the compartment or anyone opening it. Dkt. 105-4 at 22-23. It is also worth noting that, at two hours
and twenty-six minutes, the flight from Washington, D.C. to Tampa was a relatively short one. Dkt. 99-1
at 12.

judgment where a plaintiff could not show that the airline had actual or constructive knowledge of the alleged hazard posed by an overloaded overhead bin). Nor did the particular overhead bin have a history of shifting luggage or a reputation as uniquely dangerous. *Allen*, 301 F. Supp. 2d at 379-80. The Court is reluctant to go further than *Ginter*'s duty to perform "a visual check to assure that compartment doors were closed on takeoff" but not to inspect contents.

The flight attendants in fact did perform at least a visual inspection of the bins in their pre-landing sweep. Twenty minutes prior to landing, the flight attendants ensured the overhead bins were locked, the seat backs were in their upright position, and bags were under the seat; in other words, the cabin was "secured." Dkt. 105-4 at 8-9, 12; *see also* Dkt. 105-3 at 6-7. This is in accord with federal regulation. *See* Dkt. 98-1 at 66-72; *see also* 14 C.F.R. § 121.589 (requiring all baggage, items, and carry-on items to be properly stowed). As noted in *Allen*, other courts have not allowed a case to survive a motion for summary judgment based on an argument that there was a duty to investigate an overhead bin after it was closed. 301 F. Supp. 2d at 379-81.

For a similar reason, Plaintiff is also unable to connect the breach of any duty to the injuries Plaintiff sustained. First, there was no observable indication that the overhead bin was not closed. Thus, the question of the visual inspection is irrelevant to Plaintiff's claim because the bin would have opened whether the

visual inspection was performed or not. And even if there were a duty to physically push each bin before landing, such a push would not necessarily fully engage the latch, especially if there were an item, like a backpack strap, interfering with the mechanism. It is lastly worth noting that Plaintiff could not even definitively determine that it was her improperly stowed bottle that caused her injuries, as there were "many things" that fell on her.

Plaintiff fares no better under a theory of res ipsa loquitur. Indeed, even if no other passenger manipulated the overhead bin after takeoff, the instrumentality was not in the exclusive control of Defendant. Again, it could have been a passenger— and it seems it was—who ultimately closed the bin before takeoff. That no passenger touched the bin afterwards is of no consequence, especially because the flight attendants were under no duty to physically ensure the bin door was shut. Though unnecessary to resolve the case, it also bears repeating that this was Plaintiff's bottle, and she therefore contributed to the risk-creating condition. *See Pape v. DePew*, 281 So. 2d 224, 225 (Fla. 1st DCA 1973) (finding res ipsa loquitur inapplicable where evidence did not show plaintiff's lack of fault).

Plaintiffs' expert opinions do not compel a different result. For example, Plaintiffs offer the report and deposition of Kathleen Lord-Jones, a flight attendant

with many years of experience.[5] In her report, Lord-Jones notes that Defendant requires its flight attendants to do the following prior to landing: "perform a Safety Compliance Check including all elements listed in the Departure/Taxi – Safety Compliance Checks then take your jumpseat." Dkt. 99-1 at 14. She notes, however, that Defendant "does not give clear guidance in their Flight Attendant Manual on how they want the Flight Attendants to verify each bin is securely closed." *Id.* Lord-Jones then offers her own personal opinion that, as a flight attendant, she "found that to physically walk by and touch each bin latch prior to takeoff or landing during my required compliance checks ensured that the bins were closed, and the latches were properly latched." *Id.* But the preferences of one flight attendant, no matter how experienced, cannot reflect the policy of an airline, much less the required standard of care. In fact, even Lord-Jones admitted that a visual inspection complies with the carry-on baggage program under FAA regulations. Dkt. 99-2 at 93.

On a related point, Lord-Jones questions the flight attendants' supervision of the stowing process by noting that bottles are not appropriate for overhead compartments, yet she fails to explain in detail what the attendants should have done in order to spot Plaintiff's bottle in the first place. Dkt. 99-1 at 12-13. As

---

[5] Defendant seeks to preclude Lord-Jones's testimony. *See* Dkts. 99. The Court need not reach this point to resolve the instant motion.

Lord-Jones acknowledges, Flight Attendant Thomas testified that if she observed a passenger stowing a bottle in an overhead bin, she would advise the passenger to stow the bottle elsewhere. *Id.* at 12. Lord-Jones does not address in her report whether a flight attendant must open a bin that a passenger has closed in order to inspect its contents.

As for the condition of the overhead compartment itself, at the outset the Court notes that this is not a products liability action. As Defendant pointed out in its Answer, Plaintiffs chose not to join the bin manufacturer, Heath Tecna, Inc. Dkt. 67 ¶ 84. Plaintiffs acknowledge that their own expert, Dr. Elliot Stern, did not and will not "opine that the subject overhead bin compartment was defected, or that Noosi Puls' injuries were a consequence of either a design or manufacturing defect," or that the bin was "improperly maintained by [Defendant]." Dkt. 110 at 9. Indeed, he testified that he could not make any conclusion as to whether the bin suffered from a design or manufacturing defect. Dkt. 97-3 at 125-128.

Yet Dr. Stern's opinion suggests that the bin and latch system provided for limited inspection and the system's hooks were not aligned with the keepers, which resulted in a potential false latched condition, and that such a condition may not be observable when compared to adjacent bins. Dkt. 97-1. More specifically, in his report, Dr. Stern notes that the bin's "door keeper (hook receiver) is not properly adjusted as the latch hooks interfere with the aft sides of the keepers. . . . As a

result of the alignment, the overhead bin door may be fully closed but the lateral interference between the latch hooks and keepers may result in a partially latched condition." Dkt. 97-1 at 7 (emphasis omitted). But Dr. Stern also testified he could not determine whether the hooks and latch as he observed them were in the same condition on the day of the incident, three years before his inspection. Dkt. 97-3 at 75. Furthermore, in his deposition, Dr. Stern clarified that there is "no means to establish" what caused the bin not to be securely closed, whether interference by carry-on luggage or otherwise. *Id.* at 79.

Even viewing this in a light most favorable to Plaintiffs does not establish negligence. Flight Attendant Mary Thomas inspected the bin immediately after the incident and noted that the bin "did not appear to be broken," and that "[i]t opened and closed." Dkt. 105-3 at 22-23. There was thus no need for her to write a Cabin Discrepancy Report. *Id.* at 22. Because Dr. Stern's investigation was performed three years later and he was unable to confirm the bin was in a substantially similar condition, his opinion does not refute Thomas's testimony. Furthermore, Dr. Stern himself noted that a partially latched condition might not have been visible, Dkt. 97-1 at 13, which comports with the flight attendants' observations. The flight attendants, therefore, were not on notice and under no additional duty to push or reopen and close each individual bin to ensure the hooks aligned with the keepers, especially in the absence of documented issues with a particular bin.

To the extent federal regulation is relevant to the applicable standard of care, the Court lastly notes that, though Plaintiffs dispute that Defendant has an "FAA-approved carry-on baggage program," Dkt. 105 at 8, Plaintiffs have not established that Defendant violated federal regulations. Some of the regulations Plaintiffs cite are inapplicable, like 14 C.F.R. §91.13(a) which courts have reserved for especially grave circumstances like recklessly flying an airplane. *See Allen*, 301 F. Supp. 2d at 376-77. Meanwhile, 14 C.F.R. §91.523 and § 91.525(a) simply require that baggage is stowed in a "suitable baggage or cargo storage compartment," which is "approved." In this case, the overhead bins were certified and approved for use in the plane. Dkt. 110-6 at 12, 21, 42.[6] Plaintiffs do not direct the Court to a regulation that expressly requires flight attendants to ensure items like a bottle are not improperly stowed, or to open a compartment to check its contents or push a compartment to ensure a latch is fully engaged.

In short, this case arises from unfortunate circumstances: the placement of Plaintiff's glass bottle in an overhead compartment that, despite routine checks in

---

[6] The Court takes this information from the deposition testimony of an engineer for Defendant, Mitch Lineberry. Plaintiffs have moved to preclude any expert testimony from Lineberry at trial but have not moved to strike his deposition testimony. Dkt. 120. In any event, even if Mr. Lineberry is not able to opine about whether Defendant's carry-on baggage procedure meets FAA standards, he can nonetheless testify that the FAA approved the bin modification. Indeed, Plaintiffs acknowledge that Lineberry "is likely qualified to testify competently regarding general issues surrounding the subject overhead bin compartment" as he is "the corporate representative with the most knowledge of the overhead bin compartments aboard Flight 1846." *Id.* at 8, 14-15 (emphasis omitted). To the extent Plaintiffs may move to strike the entirety of Lineberry's testimony from the summary judgment materials, that motion is denied.

compliance with regulation, went undetected by flight attendants; a falsely or partially latched condition of that very compartment; and a landing—otherwise unremarkable—that caused the compartment to spring open. Though unfortunate and though the incident occurred on a flight, airlines are not "insurers of their passengers' safety." *Rosing v. Sw. Airlines Co.*, No. 12-cv-80163, 2013 WL 12101131, at \*3 (S.D. Fla. Feb. 26, 2013). In the absence of a genuine dispute as to a material fact on the negligence claim, summary judgment in Defendant's favor is appropriate.

## II.     Breach of Contract

The Complaint's third count is styled as a breach of contract claim with the purported agreement being the terms and conditions of the airline ticket. But this is a breach of contract claim in name only; as Defendant points out, Count III appears to be another negligence cause of action brought under an alternate theory of liability.

The parties agree that, in accord with the terms and conditions of the airline ticket, Texas law governs the contract. Dkt. 53-2 at 22. In Texas, a breach of contract claim requires that "(1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff

sustained damages as a result of the defendant's breach." *Viajes Gerpa, S.A. v. Fazeli*, 522 S.W.3d 524, 539 (Tex. App. 2016) (citation omitted).

By arguing that "[a]s part of the Ticket and corresponding Contract, obligations by both parties were understood and certain federal rules and regulations were applicable and imposed certain obligations on both parties for domestic flights," Plaintiff seeks to impose upon Defendant an additional standard of care, this one delineated by the abovementioned federal regulations *See* Dkt. 53 ¶ 63; 49 U.S.C. § 44701; 14 C.F.R. §91.13(a); 14 C.F.R. § 91.523; 14 C.F.R. § 91.525(a). Plaintiff also points to the ticket's Conditions of Carriage, which state that:

> At times, additional limits may be placed on carry-on baggage based on the main cabin stowage capacity of specific aircraft, which can result in carry-on bags being checked in the boarding area. In the event it is necessary to check carry-on bags, ensure that fragile or valuable items, such as keys, medication or computers are carried in your personal item. If government regulations are more restrictive, such restrictions shall apply.

Dkt. 105-11 at 15. But again, there is no record evidence Defendant violated any regulations. It is not clear, moreover, that by simply stating that government regulations apply to carry-on luggage on a flight, the parties intended to hold Defendant liable if such a regulation was not followed. In other words, the Conditions of Carriage speak to a passenger's contractual obligations, not Defendant's. Even assuming that the contract did encompass any relevant

government regulations and the regulations prohibit stowing improper items, the record at best suggests it was Plaintiff Noosi who breached her contractual duty. It would be absurd to find that Defendant breached the agreement by not preventing Plaintiff from putting the bottle in the overhead compartment.

In the absence of any breach, summary judgment in Defendant's favor on Count III is appropriate. As mentioned above, with no underlying liability there can be no loss of consortium claim and summary judgment on Count II is also appropriate.

## CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment. Dkt. 98. The remaining motions, including all requests for sanctions, are denied. Dkts. 97, 99, 115, 119-121. The Clerk is directed to enter judgment in Defendant's favor on all three counts, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Tampa, Florida, on April 23, 2019.


*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Counsel of Record